FILED

03 MAR 10 AM 10: 37

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED

MAR 10 2003

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
<u>SOUTHERN DIVISION</u>

BRENDA LEE,            )
                       )
    Plaintiff,         )
                       )
v.                     ) CIVIL ACTION NO. 00-PWG-2283-S
                       )
WILLIAM J. HENDERSON, POSTMASTER )
GENERAL, U. S. POSTAL SERVICE,   )
                       )
    Defendant.         )

<u>MEMORANDUM OF OPINION</u>

Brenda Lee, an African American female, filed this action against the Postmaster General after the Postal Service refused to rehire her upon the expiration of her one year term as a part-time "transitional employee' in April, 1998. Ms. Lee alleges unlawful discrimination based on race and sex in violation of 42 U.S.C. § 2000(e) et seq. and 42 U.S.C. § 1981 and based on disability in violation of 42 U.S.C. § 12101.

This action is before the magistrate judge pursuant to the written consent of the parties to the exercise of jurisdiction by the magistrate judge. 28 U.S.C. § 636(c) and LR 73.2. Before the court is defendant's motion for summary judgment (doc # 12). Defendant addressed Ms. Lee's ADA and § 1981 claims. Ms. Lee did not argue or brief these claims. The ADA and § 1981 claims are deemed abandoned and are hereby DISMISSED. *Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1325-26 (11th Cir. 2000).

Summary judgment is appropriate only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Rule 56, *Federal Rules of Civil Procedure*. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v.*

*Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless Ms. Lee, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [Citation omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

898 F.2d at 1532.

The following facts are undisputed or, if disputed, viewed in the light most favorable to Ms. Lee. Ms. Lee was hired by the Postal Service as a part-time "transitional employee" in June, 1994 in the position of a "Data Conversion Operator." (Lee deposition, pp.8-12). Between June 1994 and April 1998 she was re-hired on an annual basis as a transitional employee in 1995, 1996 and 1997

for the Data Conversion Operator position. (Lee deposition, pp.15-16). On or about April 10, 1998 the Postal Service did not re-hire Ms. Lee for another term. It is this refusal to rehire which is the basis of this suit. At the time that Ms. Lee was not rehired, two white employees, Shelia Gross and Randy Rutledge, were rehired. (Ferrell deposition, pp.72-73).

A "transitional employee" is hired for a specific period of time, not to exceed 360 days, based on the needs of the Postal Service. (Ferrell deposition, p.14). Ms. Lee was one of between 400 - 600 Data Service Operators who worked at the Birmingham Remote Encoding Center at the time the alleged causes of action accrued.[1] (Ferrell deposition, p.63, lines 16-23). Approximately 75 - 85 per cent of those Data Conversion Operators were "transitional employees," as opposed to career employees (Ferrell deposition, pp.65-66) and approximately 75 percent or more of all employees at that office, including Data Conversion Operators, were black. (Ferrell deposition, pp.80-81).

Although transitional employees were hired for specific terms not to exceed 360 days, those employees could be rehired at the end of their term for an additional term. (Ferrell deposition, pp.14-15). Richard D. Ferrell, the manager of the Birmingham Remote Encoding Facility where Ms. Lee worked testified in his deposition that generally the decision to rehire a transitional employee was made as a result of a consensus between the mid-level manager below him and several supervisors under that manager. (Ferrell deposition, p.18). Mr. Ferrell would then concur or overturn those decisions as the senior manager. (Ferrell, p.19). Mr. Ferrell testified that he does not

---

[1]   The number of Data Service Operators fluctuated seasonally according to the needs of the Postal Service (Ferrell deposition, pp.66-64) and varied from approximately 400 - 900. (Ferrell deposition, p.66, lines 4-23). The Data Service Operator position is being phased out nationally by the Postal Service as a result of automation. The Birmingham Remote Encoding Center, where Ms. Lee was employed, has been closed since August, 2000. (Ferrell deposition, pp.59-61).

3

specifically recall who recommended to him that Ms. Lee not be re-hired, but he believes Dorothy Owens was the mid-level manager tho made the recommendation to him. (Ferrell deposition, pp.20-23). Dorothy Owens was an African American female manager who is now deceased. (Ferrell deposition, p.20). In an affidavit, Cynthia Smith, an African American female supervisor under Ms. Owens, stated that she recommended to Ms. Owens that Ms. Lee not be rehired because she was disruptive and her work was mediocre. Ms. Smith referred to two specific incidents in her affidavit where she recalls having to reprimand Ms. Lee. (Affidavit of Cynthia Smith).

Although Ms. Lee testified that her immediate supervisor was William Kelly, a white male, (Lee deposition, p.16), she acknowledged that Ms. Smith was a floor supervisor. (Lee deposition, p.17). Ms. Lee recalled an incident in which she was verbally reprimanded by Ms. Smith for "talking on the floor." (Lee deposition, pp.25-28). Ms. Lee also testified that after the Postal Service failed to rehire her, her union president met with Mr. Kelly and Ms. Owens and reported back to her that Ms. Smith was the person who had "completed the paperwork for my [Ms. Lee's] termination." (Lee deposition, pp.21-22). Ms. Lee testified that the letter she received notifying her she would not be rehired was signed by Mr. Ferrell. (Lee deposition, p.20). Ms. Lee testified that when she asked Mr. Kelly about the letter he stated that he did not know anything about it. (Lee deposition, pp.19-20).

Ms. Lee was questioned in deposition regarding her claim of race discrimination:

> Q: Why do you think that race was a factor in the decision by the Postal Service not to renew your appointment?
>
> A: All I know is that I am a black female. I did my job. I came to work. My supervisor, Bill Kelly, is white. My attendance, my work performance, was

> not an issue because like I stated, I did my job. I came to work, and other than that, those were the only things I could think of.

(Lee deposition, p.31).

Ms. Lee also testified that Mr. Kelly supervised other African American Data Conversion Operators and that she never saw him treat any of the African American employees differently than the white employees. (Lee deposition, pp.31-32). She testified that she was never reprimanded by any supervisor other than Ms. Smith. (Lee deposition, p.32). In her affidavit Ms. Lee stated that during her employment as a transitional employee she did not receive any disciplinary actions or reprimands, reported to work on time, was not absent from work and when audited, her audits were always the highest on the floor. (Lee affidavit).

The managing supervisor, Mr. Ferrell, who signed off on the decision not to rehire Ms. Lee, testified that he did not know Ms. Lee's race at the time the decision was made not to rehire her and that he had no reason to believe the decision not to rehire her was based on race. (Ferrell deposition, p.12). On April 26, 1998 Mr. Ferrell approved the rehiring of six transitional employees. Four of the six rehired employees were African American and four were female. (Ferrell deposition, pp.71-75).

In deposition Ms. Lee was questioned regarding her claim of sex discrimination:

> Q: Why do you believe your gender was a factor in the decision not to renew your appointment?
>
> A: The fact that I was female. Bill, being my supervisor, was a male. I couldn't think of anything – again, anything else. So that's why I say gender.

(Lee deposition, pp.32-33).

Ms. Lee also testified that Mr. Kelly supervised other female employees and that she never saw him treat females differently from the way he treated males. (Lee deposition, p.33).

On August 12, 1998 Ms. Lee filed an Informal Complaint of Discrimination with the United States Postal Service, and on August 1, 1998, she filed an EEO Complaint of Discrimination. (Exhibit 1). The Birmingham Remote Encoding Center where Ms. Lee was employed was closed on or about August 2000.

On June 12, 2001 counsel for Ms. Lee served Interrogatories and Request for Production on the defendant. (Exhibit 3). Request number 3 sought the personnel files of all of defendant's employees holding the same position as Ms. Lee at the time of her termination/non-renewal of contract. Counsel for Ms. Lee was informed that the personnel files did not exist. Mr. Ferrell, Manager of the Birmingham Remote Encoding Center from 1995 to 2000, (Ferrell deposition, p.7), gave the following testimony on that subject:

> Q: Okay. Are there performance evaluations that are issued to these employees? Or I say are there. Were there at the time?
>
> A: We – we kept a record of what we refer to as edit files. And, basically, that represented accuracy issues, speed issues, productivity issues. One of the other things was that we – we had an automated system whereby we could check how long an employee had as far as break periods. If they were going – using excessive time on their breaks and they weren't being – giving attention to details, and explaining break periods, that's what –
>
> Q: Okay. Is the Postal Service still in possession of these records?
>
> A: I would have to say no.
>
> Q: Okay. Have you made an attempt – are you aware of the fact that I've requested some records like that individual's personnel files, to make some comparisons with some comparators to Ms. Lee?
>
> A: Yes, sir, I am.
>
> Q: Have you tried to find those documents?
>
> A: Yes, sir, I have.

6

| | | |
|---|---|---|
| Q: | And have you been successful? | |
| A: | No, sir, I have not. | |
| Q: | Do you have any idea where they may be? | |
| A: | The only – I mean, a lot of it was shredded or thrown out when we closed the facility. (Ferrell deposition, pp.32-33). | |

Mr. Ferrell testified that performance records that were kept on the employees were purged, many of them around the time of the closing of the facility (which would have been in 2000). (Ferrell deposition, p.45).

Where, as here, Ms. Lee seeks to prove intentional racial or sexual discrimination by using circumstantial evidence of intent rather than direct evidence, the court applies the *McDonnell Douglas* framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Ms. Lee first bears the burden of establishing a *prima facie* case of discrimination. *Id.* at 802. If she establishes a *prima facie* case of discrimination, the burden then shifts to the employer to state a legitimate nondiscriminatory reason for its employment action. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981); *Rojas v. Florida,* 285 F.3d 1339, 1342 (11th Cir. 2001). The burden then shifts back to the plaintiff to demonstrate that the proffered reason was not the true reason for the employment decision "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256. "[A] plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000).

In order to prove a *prima face* case of discriminatory discharge, a plaintiff must prove: (1) she belongs to a protected class; (2) she was subjected to adverse job action; (3) her employer treated similarly situated employees outside of her class more favorably and (4) she was qualified to do the job. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). See also *Jones v. Bessemer Carraway Medical Center*, 137 F.3d 1306, 1310 (11th Cir. 1998).

Ms. Lee states:

> The plaintiff is an African-American female qualified for the position sought. This is evidenced by the fact that she was reappointed three times, and was employed in this position from 1994 until 1998. The position was given to individuals outside these protected categories, namely Shelia Gross and Randy Rutledge, both white, and the latter being male.

Both Ms. Lee and defendant assumed for purposes of the summary judgment motion that Ms. Lee has established a *prima facie* case of discrimination for both the race and sex discrimination claims; therefore, this court will also assume that Ms. Lee has proved a *prima facie* case of discrimination.

Defendant offers a legitimate nondiscriminatory reason for not rehiring Ms. Lee – specifically, defendant stated that Ms. Lee was disruptive and her work mediocre. Mr. Ferrell was the supervisor who made the final decision not to rehire Ms. Lee (Ferrell, p.1); however, he testified that "the manager over [Lee's] pay location ... made the decision not to hire her, and I concurred with it.... Had I not concurred with it, I had the option then to go back and argue and overturn it if I so chose to." (Ferrell, p.19). He further testified that the manager who made the decision he concurred with was Dorothy Owens. (Ferrell, p.20). Ms. Owens died in February 2000. (Ferrell, p.20). Cynthia Smith submitted an affidavit in which she stated:

> I found Ms. Lee to be generally disruptive and in my opinion her work was only mediocre. During an informal meeting in 1998, I was asked by ... Dorothy

8

> Owens whether I had a recommendation on whether Ms. Lee should be reinstated at the end of her term. I advised Ms. Owens that in my opinion, Ms. Lee should not be reinstated.

(Smith affidavit).

The fact that the decision not to reinstate Ms. Lee was based on the recommendation of Ms. Smith is supported by Ms. Lee's deposition testimony that shortly after the decision not to rehire her was made, the union president met with Ms. Owens, Ms. Smith, and Mr. Kelly and was advised that Ms. Smith "completed the paperwork for [plaintiff's] termination." (Lee deposition, pp.20-23). The court concludes that defendant has met its burden of establishing a legitimate nondiscriminatory reason for not rehiring Ms. Lee – that is, that she was disruptive and her work mediocre.

Ms. Lee attempts to demonstrate that the proffered reason was not the true reason for the employment decision indirectly by arguing that the employer's proffered explanation is unworthy of credence presumably because certain personnel records were destroyed in violation of 29 C.F.R. § 1602.14 which provides:

> Any personnel or employment record made or kept by an employer (including but not necessarily limited to requests for reasonable accommodation, application forms submitted by applicants and other records having to do with hiring, promotion, demotion, transfer, layoff or termination, rates of pay or other terms of compensation, and selection for training or apprenticeship) shall be preserved by the employer for a period of one year from the date of the making of the record or the personnel action involved, whichever occurs later. In the case of involuntary termination of an employee, the personnel records of the individual terminated shall be kept for a <u>period of one year</u> from the date of termination. Where a charge of discrimination has been filed, or an action brought by the Commission or the Attorney General, against an employer under title VII or the ADA, the

9

respondent employer shall preserve all personnel records relevant to the charge or action until final disposition of the charge or the action. The term "personnel records relevant to the charge," for example, would include personnel or employment records relating to the aggrieved person and to all other employees holding positions similar to that held or sought by the aggrieved person and application forms or test papers completed by an unsuccessful applicant and by all other candidates for the same position as that for which the aggrieved person applied and was rejected. The date of "final disposition of the charge or the action" means the date of expiration of the statutory period within which the aggrieved person may bring an action in a U.S. District Court or, where an action is brought against an employer either by the aggrieved person, the Commission, or by the Attorney General, the date on which such litigation is terminated.

Ms. Lee cites two cases that she argues require the denial of the motion for summary judgment based on the destruction of records. She cites *Lombard v. MCI Telecommunications Corp.*, 13 F. Supp. 2d 621 (N.D. Ohio 1998) as a case similar the one presently before the court. In Lombard, the court stated "[i]f MCI failed to preserve its records as required, then Lombard is 'entitled to the benefit of a [rebuttable] presumption that the destroyed documents would have bolstered her case.'" Ms. Lee also cites *Scott v. IBM Corp.*, 196 F.R.D. 233 (D. N.J. 2000) wherein the court stated "Negative inference permitted by evidence that employer destroyed relevant documents provided grounds for disbelieving employer's proffered reasons for discharging employee, thus raising genuine issues of material fact precluding summary judgment in favor of employer or age and race discrimination claims." Both *Lombard* and *Scott* are distinguishable from the case at hand. In *Lombard*, a retaliation case, the defendant purged plaintiff's personnel file of all positive comments in favor of negative documentation and further purged all investigative

records of the underlying incident. In *Scott*, a reduction-in-force case, the defendant destroyed records that specifically involved the determination of which employees should be fired or surplused. Clearly, in both *Lombard* and *Scott*, the destroyed records would have been relevant. The destroyed records in this case, however, would have been of limited relevance.

    Ms. Lee argues:

> In order to make the necessary comparison between the plaintiff and these two named comparators [Shelia Gross and Randy Rutledge], it is necessary to review their relevant records, and compare their work history. When Mr. Ferrell, who was the final decision maker was asked what factors were considered in making that decision not to rehire the plaintiff, he responded that it may have been a variety of reasons. He explained that things such as performance related issues, tardiness, attendance related issues, and her performance on the floor could have been considerations in the defendant's decision not to reappoint the plaintiff. (Ferrell, pp. 29-30). While Ferrell "hypothesized" as to the factors that may have come into play, he qualified his hypothesis by stating that "there may have been the input of several supervisors involved" (Ferrell, p. 29) that he could not testify specifically as to why plaintiff was not rehired. (Ferrell, p. 30).

As discussed above, Ms. Owens made the recommendation to Mr. Ferrell that Ms. Lee not be rehired and Mr. Ferrell concurred with that recommendation. Ms. Owens' recommendation was apparently based on the recommendation of Ms. Smith that Ms. Lee not be rehired because she was disruptive and her work mediocre.

    While the missing files could have conceivably shown that Ms. Lee's work, as compared to Gross's and Rutledge's work, was not inferior, there is nothing to indicate that the missing files would have contained material that would have allowed Ms. Lee to compare herself with her

comparators with respect to disruptiveness. The missing files "represented accuracy issues, speed issues, productivity issues" and the length of breaks. The files were disposed of when the facility was closed in 2000. (Ferrell, p.32-33). Although Ms. Lee states in her affidavit that she did not receive any disciplinary actions or reprimands from any supervisors, (Lee's affidavit), she does not dispute having a confrontation with Ms. Smith about "talking on the floor" or two other incidents referred to in Ms. Smith's affidavit. Moreover, disruptiveness would not have necessarily resulted in "disciplinary actions" or "reprimands" in the formal sense.

Because there is no indication that the missing files would have contained any material relevant to whether Ms. Lee or other employees were disruptive, the destruction of records does not require the court to find defendant's explanation that Ms. Lee was disruptive to be unworthy of credence. The court does however find defendant's explanation that Ms. Lee's work was mediocre to be unworthy of credence based on the destruction of relevant records. Nevertheless, Ms. Lee has the burden of rebutting both reasons (mediocre work and disruptiveness) proffered by defendant. *Chapman v. AI Transport*, 229 F.3d 1012, 1024-25 (11th Cir. 2000). Ms. Lee cannot carry the burden of rebutting the explanation of disruptiveness based on the destruction of records.

Ms. Lee also stated in her affidavit that she "noticed similarly situated white and male employees who were absent excessively, received written reprimands, and had verbal disputes with supervisors. These white and male employees were employed at [Lee's] location and were there for more than one year, meaning they were reappointed at some point during their employment." Defendant has not stated as a basis for the decision not to rehire Ms. Lee either excessive absences or reprimands; therefore, whether other employees had more absences or reprimands is not relevant here. Verbal disputes with supervisors, however, might be relevant since Ms. Lee has been accused

of being disruptive. Significantly, however, Ms. Lee has not identified by name any of these "similarly situated white and male employees" she noticed having verbal disputes with supervisors. Further, she has not alleged that she was aware of either of the named comparators, Gross and Rutledge, having verbal disputes with supervisors. Ms. Lee has failed to demonstrate that the proffered reason for defendant's failure to rehire her, her disruptiveness, was not the true reason for the employment decision.

Defendant's motion for summary judgment is due to be GRANTED. A separate order consistent with this memorandum of opinion will be entered simultaneously herewith.

DONE this the 10th day of March, 2003.

_____
PAUL W. GREENE
UNITED STATES MAGISTRATE JUDGE